UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10540-RGS

QBE INSURANCE CORPORATION

v.

ARTHUR ANUFROM d/b/a ARCH PLUMBING

v.

COPLEY/FINCH MANAGEMENT CORPORATION

v.

LOURENCO ABRANTES d/b/a SENENCE COMPANY

MEMORANDUM AND ORDER
ON THIRD-PARTY DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

August 3, 2018

STEARNS, D.J.

In September of 2016, Arthur Anufrom, a Boston-area "small-job" plumber, was hired to renovate the bathroom of a Back Bay condominium. While the renovation was underway, a housekeeper mistakenly opened the condo unit's water valve, causing water to spew through uncapped supply lines. The resulting deluge flooded the unit and the condos below. QBE Insurance Company (QBE), acting as subrogee for the 330 Beacon Street

Condominium Trust (Trust), brought a negligence suit against Anufrom for the water damage.  In response, Anufrom filed a third-party complaint against the building's management company, Copley/Finch Management Corporation (Copley), seeking contribution.  Copley resisted, arguing that its contract with the Trust contains a subrogation waiver provision.

BACKGROUND

On April 20th, 2004, Copley executed a "Condominium Management Agreement" (the Agreement) with the Trust regarding its building at 330 Beacon Street, Boston, Massachusetts.  Copley's Mot. for Summ. J. (Copley's Mot.), Ex. 1 at 1, 10.  The Agreement provided, in relevant part:

> <u>Insurance</u>.  Except as obtained and paid for directly by the Owner [the Trust], cause (at Owner's expense, or Manager [Copley] to be reimbursed by Owner) to be placed or kept in force (i) all insurance on the Property other than any insurance which shall be maintained by, and at the expense of, the Unit Owners, (ii) general public liability insurance with respect to bodily injury or death in amounts not less than $1,000,000 to any one person and not less than $3,000,000 per accident, and not less than $500,000 with respect to property damage, (iii) workmen's compensation insurance covering all persons employed by the Manager or the Owner pursuant to all the terms of this Agreement, and (iv) employer's liability insurance.  The Owner, at its expense, shall also maintain Owner's directors and officers [sic] liability insurance.  All insurance described above in this subsection which is carried by the Owner or placed by the Manager on behalf of the Owner, and all umbrella and/or other insurance carried by the Owner or placed by the Manager on behalf of the Owner (if any), shall, at Owner's expense (if any), also cover and name the Manager as an insured for liability purposes and *shall contain a waiver of subrogation of any*

> *claims against the Manager.* The Owner and Manager each agree to provide certificates of insurance to the other evidencing the insurance and other coverage noted in this section. . . .
>
> LIABILITY; INDEMNITY. The Manager shall not be liable to the Owner for any loss or damage unless caused solely by the Manager's own negligence or willful misconduct in bad faith. [1]

In September of 2016, the owners of condo Unit 154, a Mr. and Mrs. Arena, at the recommendation of Copley's Maintenance Superintendent, Mario Moura, hired Anufrom to redo the plumbing during a "gut renovation" of their bathroom. Anufrom's Opp'n to Copley's Mot. for Summ. J. (Anufrom's Opp'n) at 3. On September 20, 2016, Anufrom met with Larry Abrantes – the general contractor – and Moura at Unit 154. *Id.* at 3-4. Moura explained to Anufrom and Abrantes that the shut off valve for the Unit's water supply lines was located in the adjacent Unit 155, which was owned by a mostly absentee family who rarely visited. *Id.* at 4. On the day the work began, Moura entered Unit 155 and shut off the water supply to the Arenas' Unit. *Id.* Moura did not post a notice warning against turning the water supply back on. *Id.*

Anufrom worked for a week without incident. *Id.* at 6. On September 26, 2016, before leaving work, Anufrom left the shower lines exposed and uncapped, as he was planning to install a new shower valve the following day

---

[1] *Id.* at 3 (emphasis in original).

or the next. *Id.* at 7. On September 27, 2016, a Copley employee admitted a housekeeper to Unit 155. *Id.* While cleaning the Unit, the housekeeper (who had not been warned of the danger) opened the water valve, causing Unit 154 to flood. *Id.* at 7-8. When Copley learned of the damage, it called Anufrom who returned to Unit 154 and capped the shower pipes. *Id.* at 8. This finger-pointing lawsuit then ensued. Before the court is Copley's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

"Questions of statutory construction are questions of law." *Bridgewater State Univ. Found. v. Assessors of Bridgewater*, 463 Mass. 154, 156 (2012).

DISCUSSION

Copley has two separate reasons why it should be granted summary judgment: (1) the aforementioned waiver of subrogation; and/or (2) Anufrom's failure to allege facts substantiating any claim of negligence against it.

*Waiver of Subrogation & Contribution Claim*

Copley contends that the waiver of subrogation contained in the management agreement with the Trust precludes any contribution claim by Anufrom, because the Trust "could not recover directly from" Copley. Copley's Mot. at 5. In opposition, Anufrom argues that because he was not a party to the agreement (which bound only the Trust), his statutory right of contribution cannot be abrogated by a third-party private contract. While this issue has not yet been decided by a Massachusetts appellate court,[2] the

---

[2] Copley's reliance on case law such as *Dighton v. Fed. Pacific Elec. Co.*, 399 Mass. 687, 691 (1987), and *Correia v. Firestone Tire & Rubber Co.,* 388 Mass. 342, 346 (1983), is misplaced. In both cases, contribution rights were superseded by statutory schemes that precluded plaintiffs from seeking relief against third-party defendants. *Dighton*, 399 Mass. at 688-691 (affirming dismissal of a third-party contribution claim, as plaintiff could not have sought damages from the manufacturer by virtues of the "statute of repose"); *see also Correia*, 388 Mass. at 346 ("A third-party tortfeasor has no right of contribution . . . from an insured . . . employer whose negligence contributed

5

Superior Court, in *ASN Park Essex, LLC v. E.M. Duggan, Inc.*, answered the question in Anufrom's favor on a similar set of facts and an identical legal question. 2012 WL 6765591, at *1 (Mass. Super. Dec. 26, 2012). While Superior Court precedent is not controlling, I am persuaded by the Superior Court's reasoning, and adopt it.[3]

Chapter 231B § 1(a) of the General Laws states: "Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them." The crux of Copley's counter-argument rests on the phrase "liable in tort" – because the waiver of subrogation precludes the Trust from bringing suit against Copley, the argument goes, Copley cannot possibly be considered "liable in tort" as the statute requires. However, the term "liable in tort" "is broad in scope and not suitable language for implying a narrow or restricted range of application within the framework of potential

---

to the employee's injury" if the employee had collected benefits pursuant to the worker's compensation statute.). These cases have no bearing on an attempt to use a private contract to defeat a statutory right of a third-party stranger to the agreement.

[3] "State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

tort defendants." *Hayon v. Coca Cola Bottling Co.*, 375 Mass. 644, 649 (1978). Consequently, Chapter 231B § 1(a) "should be interpreted in a manner that advances the objectives of the Legislature in enacting it." *McGrath v. Stanley*, 397 Mass. 775, 781 (1986).

The Superior Court in *ASN* draws a compelling distinction between private contractual arrangements and the statutory schemes that figured in *Dighton* and *Correia*. While the Statute of Repose and the Worker's Compensation Law reflect the Legislature's balancing of "competing economic interests" – accomplished by giving statutory relief to third-parties from suit, "waivers of subrogation clauses in private contracts do not implicate a Legislature's decision to enact economic regulation." *ASN*, 2012 WL 6765591, at *3. Instead, the objective of Chapter 231B § 1(a) is to achieve "a more equitable distribution of . . . burden among those liable in tort for the same injury." *McGrath*, 397 Mass. at 781. "The relationship of [the parties] vis-à-vis [the insured], assuming the negligence of all of them, is a typical tortfeasor situation." *ASN,* 2012 WL 6765591, at *3 (quoting *New Amsterdam Cas. Co. v. Holmes*, 435 F.2d 1232, 1235 (1st Cir. 1970) ("Nothing in the policy of the [Rhode Island contribution statute, in this regard similar to Chapter 231B], or in its language, [makes for] an exception

7

depriving appellants of their right to seek contribution simply because appellees had personal insurance.").

Here, Chapter 231B's language does not equip Copley with a shield from Anufrom's statutory right of contribution. Moreover, despite the waiver of subrogation, "at the time the tortious activity occurred," Copley "could have been held liable in tort." *McGrath*, 397 Mass. at 781. The Liability provision of the Agreement provides: "The Manager shall not be liable to the Owner for any loss or damage *unless caused solely by the Manager's own negligence* or willful misconduct in bad faith." Copley's Mot., Ex. 1 at 3 (emphasis added). If a factfinder were to determine that Copley's own negligence was 100 percent the cause of the water damage, it would be liable in tort to the Trust.

Finally, the *ASN* decision also highlights the potential injustice of preventing a defendant from bringing a third-party contribution suit even though he was not a party to a contract putatively stripping him of his statutory rights. It is axiomatic that, with rare exception, "a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). It follows that when a third-party plaintiff is "a stranger to the contract upon which [a defendant] relies[,] such a contract should not be permitted to restrict statutory rights that [the third-party plaintiff] did not consent to give

up." *ASN*, 2012 WL 6765591, at *3-4, quoting *Fireman's Ins. Co. of Washington, D.C. v. Fire-Free Chimney Sweeps, Inc.*, 2010 WL 1268158, at *3 (Del. Super. Jan. 5, 2010). "It would be an injustice to prevent [third-party plaintiff] from potentially offsetting its liability under these circumstances." *Id.*

### *Prima Facie Negligence Claim*

Copley argues in the alternative that because Anufrom did not produce evidence that Copley violated a duty of care to the Trust and did not offer expert testimony to the contrary, his contribution claim must fail. Anufrom counters with the claim that Copley had a reasonable duty of care to ensure that water was not restored to the Unit without advance notice, and that it admitted the housekeeper to the adjoining Unit without any warning against turning the water back on (something that a cleaning maid would be reasonably expected to do in aid of her work). To make out a prima facie negligence claim, a third-party plaintiff must show "that the [third-party] defendant owed the plaintiff a duty of reasonable care, that the [third-party] defendant breached this duty, that damage resulted, and that there was a

causal relation between the breach of the duty and the damage." *Jupin v. Kask*, 447 Mass. 141, 146 (2006).[4]

Viewing the facts in "in the light most flattering" to Anufrom, one could find from the deposition testimony of Moura that Copley had a duty of care, as the party with exclusive access to the water valve in Unit 154, to ensure that it was not accidentally turned on. *Nat'l Amusements*, 43 F.3d at 735; *see* Anufrom's Opp'n, Ex. 3 (Moura Dep.) at 59 ("A: He needed me to shut off the water, yeah. . . Q: He could have done it himself? A: Well, we don't allow somebody to go – I wouldn't allow a plumber or anybody else to go into somebody else's unit."). Additionally, a jury could find that Copley breached that duty of care by neglecting to install a failsafe procedure or provide a warning against activating the water valve. *Id.*, Ex. 3 at 33 ("Q: When you turned off the water in Unit . . . 155, did you put a sign on there or tag it or anything to say not to turn it back on? A: No. Q: Did you have discussions with anyone else at Copley/Finch about leaving the water off? A: Well, no."). The fact that the damage resulted solely from the water valve being turned

---

[4] As a matter of law, a nonmoving party is not required to "produce evidence in a form that would be admissible in trial," such as expert testimony, "to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

on is undisputed, and a reasonable factfinder could conclude that "it was reasonably foreseeable that the failure to control the possibility of sudden and unexpected restoration of water service to the premises while the plumbing was under construction could lead to possible flooding and substantial property damage." *Id.* at 16. These are genuine disputes of material fact. Copley therefore is not entitled to summary judgment.

## ORDER

For the foregoing reasons, Copley's motion for summary judgment is <u>DENIED</u>. The Clerk shall assign this case the next available trial date.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE